**No. 2023-2346**

# IN THE
# United States Court of Appeals
## FOR THE FEDERAL CIRCUIT

LYNK LABS, INC.,

*Appellant*,

V.

SAMSUNG ELECTRONICS CO., LTD.,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2022-00149

---

**BRIEF OF *AMICUS CURIAE* VLSI TECHNOLOGY LLC
IN SUPPORT OF APPELLANT AND REVERSAL**

---

Jordan A. Rice
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
(312) 450-6700 (telephone)
(312) 450-6701 (fax)

Jeffrey A. Lamken
  *Counsel of Record*
Lucas M. Walker
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (fax)
jlamken@mololamken.com

*Counsel for Amicus Curiae VLSI Technology LLC*

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-2346 |
| **Short Case Caption** | Lynk Labs, Inc. v. Samsung Electronics Co., Ltd. |
| **Filing Party/Entity** | VLSI Technology LLC (amicus curiae) |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/17/2024

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| VLSI Technology LLC | | CF VLSI Holding LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)    ☐  No    ☑  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

Page

INTEREST OF *AMICUS CURIAE* ........................................................... 1

INTRODUCTION ................................................................................... 2

ARGUMENT. ........................................................................................ 4

I.    Prior Art "Printed Publications" Must Be Publicly Accessible
      Before the Challenged Patent's Critical Date ................................... 5

      A.    A Reference Cannot Be a Prior Art "Printed Publication"
            If It Was Not Publicly Accessible Before the Critical Date ............... 5

      B.    Patent Applications Filed with the PTO that Have Not
            Been Published Are Not Publicly Accessible ................................... 8

II.   The Board's Contrary Decision Defies the Statute ...................... 11

      A.    Congress Limited IPRs to Prior Art Patents and Printed
            Publications While Excluding Other Categories of
            Prior Art, Including Applications for Patent Under
            Pre-AIA §102(e)(1) .......................................................... 12

      B.    Prior Art "Printed Publications" that May Serve as the
            Basis for an IPR Must Be Publicly Accessible Before
            the Critical Date ............................................................. 16

      C.    The Board's Remaining Rationales Are Unpersuasive ..................... 19

CONCLUSION .................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Acceleration Bay, LLC v. Activision Blizzard Inc.*,
    908 F.3d 765 (Fed. Cir. 2018) .................................................................*passim*

*Automated Merch. Sys. v. Lee*,
    782 F.3d 1376 (Fed. Cir. 2015) ........................................................21

*Azar v. Allina Health Servs.*,
    139 S. Ct. 1804 (2019) ....................................................................18

*In re Bayer*,
    568 F.2d 1357 (C.C.P.A. 1978) ...............................................6, 7, 18

*Becton, Dickinson & Co. v. Baxter Corp. Englewood*,
    998 F.3d 1337 (Fed. Cir. 2021) ........................................................22

*Brecht v. Abrahamson*,
    507 U.S. 619 (1993) .........................................................................21

*Brown v. Guild*,
    90 U.S. 181 (1874) ...............................................................3, 10, 14

*Bruesewitz v. Wyeth LLC*,
    562 U.S. 223 (2011) .........................................................................18

*Carella v. Starlight Archery & Pro Line Co.*,
    804 F.2d 135 (Fed. Cir., 1986) ........................................................23

*Constant v. Adv. Micro-Devices, Inc.*,
    848 F.2d 1560 (Fed. Cir. 1988) ..........................................................6

*Cordis Corp. v. Boston Sci. Corp.*,
    561 F.3d 1319 (Fed. Cir. 2009) ..............................................7, 9, 10

*In re Cronyn*,
    890 F.2d 1158 (Fed. Cir. 1989) ...............................................6, 7, 18

*In re Hall*,
   781 F.2d 897 (Fed. Cir. 1986) ....................................................6, 7, 18

*Hazeltine Rsch., Inc. v. Brenner*,
   382 U.S. 252 (1965)........................................................................22

*Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*,
   139 S. Ct. 628 (2019).......................................................................19

*Jazz Pharm., Inc. v. Amneal Pharm. LLC*,
   895 F.3d 1347 (Fed. Cir. 2018) ........................................................7

*In re Klopfenstein*,
   380 F.3d 1345 (Fed. Cir. 2004) ........................................................6

*In re Lister*,
   583 F.3d 1307 (Fed. Cir. 2009) ..............................................*passim*

*Nw. Fire Extinguisher Co. v. Philadelphia Fire Extinguisher Co.*,
   18 F. Cas. 394 (E.D. Pa. 1874) .......................................................14

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
   138 S. Ct. 1365 (2018)......................................................................15

*Patent Quality Assurance, LLC v. VLSI Tech. LLC*,
   IPR2021-01229, Paper 129 (PTAB June 13, 2023) ...................*passim*

*Peter v. Nantkwest, Inc.*,
   140 S. Ct. 365 (2019)........................................................................14

*Purdue Pharma L.P. v. Iancu*,
   767 F. App'x 918 (Fed. Cir. 2019) ..................................................21

*Qualcomm Inc. v. Apple Inc.*,
   24 F.4th 1367 (Fed. Cir. 2022) ..............................................5, 23, 24

*Return Mail, Inc. v. U.S. Postal Serv.*,
   139 S. Ct. 1860 (2019)......................................................................23

*Richard v. United States*,
   677 F.3d 1141 (Fed. Cir. 2012) .......................................................13

*Russello v. United States*,
464 U.S. 16 (1983) ................................................................. 13

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
948 F.3d 1342 (Fed. Cir. 2020) ............................................. 4

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
929 F.3d 1363 (Fed. Cir. 2019) .............................. 7, 17, 23

*SAS Institute, Inc. v. Iancu*,
138 S. Ct. 1348 (2018) ......................................................... 24

*Taggart v. Lorenzen*,
139 S. Ct. 1795 (2019) ......................................................... 15

*Valve Corp. v. Ironburg Inventions Ltd.*,
8 F.4th 1364 (Fed. Cir. 2021) ................................... 4, 6, 7

*Voter Verified, Inc. v. Premier Election Sols., Inc.*,
698 F.3d 1374 (Fed. Cir. 2012) ................................... 4, 6

## STATUTES

35 U.S.C. § 102 ..................................................................... *passim*

35 U.S.C. § 102 (2006) ................................... 13, 16, 17, 20

35 U.S.C. § 102(a) (2006) ...................................... 4, 12, 19, 20

35 U.S.C. § 102(a)(1) ........................................................ 4, 12

35 U.S.C. § 102(a)(2) ............................................................ 12

35 U.S.C. § 102(b) (2006) ................................................. *passim*

35 U.S.C. § 102(e)(1) (2006) ........................................... *passim*

35 U.S.C. § 102(e)(2) (2006) ............................................... 22

35 U.S.C. § 103 ............................................................. 4, 5, 18

35 U.S.C. § 122(a) .................................................. 3, 8, 10, 14

35 U.S.C. § 122(b) .................................................................. 14

35 U.S.C. §122(b)(1) ..........................................................................8

35 U.S.C. §122(b)(2)(A)(i) .................................................................8

35 U.S.C. §282(b)(2) ........................................................................12

35 U.S.C. §282(b)(3) ........................................................................12

35 U.S.C. §301 (2000) ......................................................................16

35 U.S.C. §301(a) (2000) ..................................................................16

35 U.S.C. §311 (2000) ......................................................................16

35 U.S.C. §311(a) (2000) ..................................................................16

35 U.S.C. §311(b) .......................................................................*passim*

35 U.S.C. §321(b) .............................................................................12

Act of July 4, 1836, ch. 357, §7, 5 Stat. 117, 119-20 ...........................14

American Inventors Protection Act of 1999, Pub. L. No. 106-113,
   tit. IV, 113 Stat. 1501, 1501A-552:
      §4505, 113 Stat. at 1501A-565 ...................................................15
      §4604, 113 Stat. at 1501A-567 to -570 ................................15, 16

Leahy-Smith America Invents Act, Pub. L. No. 112-29,
   125 Stat. 284 (2011):
      §3(n)(1), 125 Stat. at 293 .........................................................19
      §18(a)(1)(C)(i), 125 Stat. at 330 ...............................................19

## OTHER AUTHORITIES

H.R. Rep. 112-98, pt. 1 (2011) ...........................................................4

1 William C. Robinson, *The Law of Patents for*
   *Useful Inventions* (1890)............................................................7, 14

2 William C. Robinson, *The Law of Patents for*
   *Useful Inventions* (1890)...............................................................14

John E. Vick, Jr., *Publish and Perish: The Printed Publication as a*
   *Bar to Patentability*, 18 AIPLA Q.J. 235 (1990)...............................14

# INTEREST OF *AMICUS CURIAE*[1]

This appeal concerns an issue of broad importance. When Congress created inter partes reviews as part of the America Invents Act, it imposed a critical limit: IPRs may be based "only" on "prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). This case concerns whether a patent application that never issued as a patent, and was not publicly accessible before a challenged patent's critical date, qualifies as a "prior art" "printed publication" that may be the basis for an IPR under 35 U.S.C. § 311(b). *See* Lynk Labs Br. 57-66.

Amicus VLSI Technology LLC is the appellant in a pending appeal that presents the same legal question. *See VLSI Tech. LLC v. Patent Quality Assurance LLC*, No. 23-2298 (Fed. Cir.). In VLSI's case, as here, the Patent Trial and Appeal Board ruled that a patent application may be the basis for an IPR under § 311(b), even though the application was not publicly accessible before the challenged patent's critical date. In reaching that conclusion in this case, the Board cited its final written decision in VLSI's case, which issued several days earlier. Appx12 (citing *Patent Quality Assurance, LLC v. VLSI Tech. LLC*, IPR2021-01229, Paper 129 at 27-29 (PTAB June 13, 2023)).

---

[1] No one, other than *amicus* or its counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief, in whole or in part. All parties have consented to the filing of this amicus brief.

1

The appeal in VLSI's case was stayed to facilitate a limited remand to the PTO for resolution of other outstanding issues. Consequently, the Court is likely to reach the printed-publication issue in this case before it decides the appeal in VLSI's case. VLSI thus has a strong interest in the question presented here, and in assisting the Court in resolving that issue in accordance with the law.

## <u>INTRODUCTION</u>

When Congress established inter partes review, it set forth clear statutory boundaries. Most salient here, IPR petitioners may challenge patent claims "*only* on the basis of prior art consisting of *patents* or *printed publications*." 35 U.S.C. §311(b) (emphasis added). In the IPRs underlying both this appeal and amicus VLSI's pending appeal (Fed. Cir. No. 23-2298), however, the Patent Trial and Appeal Board based unpatentability findings on a different kind of reference: abandoned patent applications that never issued as patents, and were published only *after* the challenged patent's critical date. In this case, the Board based its findings on the abandoned "Martin" patent application; in VLSI's case, it invoked the abandoned "Abadeer" patent application. Appx10-12; *Patent Quality Assurance*, IPR2021-01229, Paper 129 at 27-29.

Congress's requirement that IPRs be founded "only on . . . prior art consisting of patents or printed publications," §311(b), precludes the Board from basing IPR unpatentability findings on abandoned patent applications like Martin and Abadeer.

It is undisputed that such references are not prior art "patents," because they never issued as patents. *Brown v. Guild*, 90 U.S. 181, 210-11 (1874) ("mere application for a patent" is not a "'patent'"). Nor are they prior art "printed publications." A "printed publication" must be "*publicly accessible* before the [challenged patent's] critical date." *Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 772-74 (Fed. Cir. 2018) (emphasis added). A patent application that has not yet been published is *not* publicly accessible: Indeed, it is legally *required* to "be kept in confidence by the Patent and Trademark Office." 35 U.S.C. § 122(a).

In this case, the Martin application was not published until October 21, 2004, eight months after the date (February 25, 2004) petitioner Samsung has conceded to be the challenged patent's "critical date." Appx6049; *see* Lynk Labs Br. 57. In amicus VLSI's case, the Abadeer application likewise was not published until well after the critical date for VLSI's patent. *Patent Quality Assurance*, IPR2021-01229, Ex. 1004 at 1; *id.*, Ex. 1001 at 1. Nor is there any contention that either application was publicly accessible before the PTO published it. That should be the end of the inquiry. Martin and Abadeer undisputedly never issued as "patents." And because neither was publicly accessible before the relevant critical dates, they are not prior

art "printed publications" either.  § 311(b).  They thus cannot serve as the basis for

challenging Lynk Labs' and VLSI's patents in IPR.[2]

## ARGUMENT

Congress struck a careful balance in enacting the America Invents Act.  While

establishing procedures, including IPRs, to provide "quick and cost effective

alternatives to litigation," it also recognized the "importance of quiet title to patent

owners."  H.R. Rep. 112-98, pt. 1, at 48 (2011).  To achieve its intended balance,

Congress "set[ ] limits on" IPRs and the PTO's authority, authorizing IPRs only on

a "narrow set of [unpatentability] grounds."  *Samsung Elecs. Am., Inc. v. Prisua

Eng'g Corp.*, 948 F.3d 1342, 1345-46 (Fed. Cir. 2020).  This case concerns the

statutory requirement that IPRs be limited to grounds assertable under §§ 102 and

103 "and only on the basis of prior art consisting of patents or printed publications."

---

[2] When determining whether a reference is a prior art printed publication, this
Court's cases refer to the "critical date" as the date before which the reference must
have been a printed publication—that is, the date before which it must have been
publicly accessible.  That usage applies regardless of how the critical date is
calculated in a given case (*e.g.*, the date of the "invention" under pre-AIA § 102(a),
one year before "the date of the application for patent" under pre-AIA § 102(b), or
the "effective filing date of the claimed invention" under post-AIA § 102(a)(1)).  *See
Acceleration Bay*, 908 F.3d at 772-74 & n.6; *Voter Verified, Inc. v. Premier Election
Sols., Inc.*, 698 F.3d 1374, 1377, 1379-80 (Fed. Cir. 2012); *Valve Corp. v. Ironburg
Inventions Ltd.*, 8 F.4th 1364, 1370 n.3, 1373 (Fed. Cir. 2021).  There is no dispute
here or in VLSI's case that the relevant reference was published and became publicly
available only after the applicable critical date.

35 U.S.C. § 311(b).  On multiple occasions, the Board has disregarded that express limit on its authority and the scope of IPRs.

## I.    PRIOR ART "PRINTED PUBLICATIONS" MUST BE PUBLICLY ACCESSIBLE BEFORE THE CHALLENGED PATENT'S CRITICAL DATE

Congress strictly limited the scope of IPRs.  "A petitioner in an inter partes review" may challenge claims as unpatentable "only on a ground that could be raised under section 102 or 103 *and only on the basis of prior art consisting of patents or printed publications*."  35 U.S.C. § 311(b) (emphasis added).  Accordingly, a reference may not serve as a basis for an IPR unless the reference is "a prior art patent or prior art printed publication."  *Qualcomm Inc. v. Apple Inc.*, 24 F.4th 1367, 1375 (Fed. Cir. 2022).  That should end the matter here.  The Martin reference undisputedly never issued as a "patent."  And because it was not published until *after* the challenged patent's critical date, it is not a prior art "printed publication."  That conclusion is compelled by the established meaning of "printed publication."

### A.    A Reference Cannot Be a Prior Art "Printed Publication" If It Was Not Publicly Accessible Before the Critical Date

In the context of prior art, the term "printed publication" has a well-settled meaning.  Time and again, this Court has held that a prior art "printed publication" must be "publicly accessible before the [challenged patent's] critical date."  *Acceleration Bay*, 908 F.3d at 772-74.  For decades, in case after case, this Court and its predecessor have adhered to that principle:

- "For a reference to qualify as a printed publication, 'before the critical date the reference must have been sufficiently accessible to the public interested in the art.'" *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1373 (Fed. Cir. 2021) (quoting *Constant v. Adv. Micro-Devices, Inc.*, 848 F.2d 1560, 1568 (Fed. Cir. 1988)).

- "When considering whether a given reference qualifies as a prior art 'printed publication,' the key inquiry is whether the reference was made 'sufficiently accessible to the public interested in the art' before the critical date." *Voter Verified, Inc. v. Premier Election Sols., Inc.*, 698 F.3d 1374, 1380 (Fed. Cir. 2012).

- "In order to qualify as a printed publication . . . , a reference 'must have been sufficiently accessible to the public interested in the art.'" *In re Lister*, 583 F.3d 1307, 1311 (Fed. Cir. 2009).

- "'The statutory phrase "printed publication" has been interpreted to mean that before the critical date the reference must have been sufficiently accessible to the public interested in the art; dissemination and public accessibility are the keys to the legal determination whether a prior art reference was "published."'" *In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004) (quoting *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989)).

- "The proponent of the publication bar must show that prior to the critical date the reference was sufficiently accessible, at least to the public interested in the art, so that such a one by examining the reference could make the claimed invention without further research or experimentation." *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986).

- "It is well settled that in determining whether a printed document constitutes a publication bar . . . the touchstone is public accessibility." *In re Bayer*, 568 F.2d 1357, 1359 (C.C.P.A. 1978).

That requirement applied before enactment of the America Invents Act, and it continues to apply today. *See Valve Corp.*, 8 F.4th at 1370 n.3, 1373 (applying the post-AIA statute); *Acceleration Bay*, 908 F.3d at 772-74 & n.6 (applying the pre-

AIA statute); *Cronyn*, 890 F.2d at 1160 (applying the pre-AIA statute); 1 William C. Robinson, *The Law of Patents for Useful Inventions* §327, at 448 (1890) (A "publication" "must . . . have been placed within [the public's] reach" and "must have been actually published in such a manner that any one who chooses may avail himself of the information it contains."). This Court has repeatedly applied that requirement in IPRs governed by §311(b). *See, e.g.*, *Valve Corp.*, 8 F.4th at 1367, 1373; *Acceleration Bay*, 908 F.3d at 769, 772-74; *Samsung Elecs. Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1365, 1368-69 (Fed. Cir. 2019).

Public accessibility is not merely a factor relevant to being a "printed publication"—it is the core requirement. This Court has "emphasized" that "public accessibility . . . is the '*touchstone*'" for determining whether a reference is a prior art "'printed publication.'" *Infobridge*, 929 F.3d at 1369 (emphasis added) (quoting *Jazz Pharm., Inc. v. Amneal Pharm. LLC*, 895 F.3d 1347, 1355 (Fed. Cir. 2018)); *see, e.g.*, *Lister*, 583 F.3d at 1311; *Hall*, 781 F.2d at 898-99; *Bayer*, 568 F.2d at 1359. "[A]ccessibility goes to the issue of whether interested members of the relevant public could obtain the information if they wanted to." *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1333 (Fed. Cir. 2009). A document is "publicly accessible" where "it was 'disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it.'" *Acceleration Bay*, 908 F.3d at 772.

7

### B.     Patent Applications Filed with the PTO that Have Not Been Published Are Not Publicly Accessible

A patent application that has been filed with the PTO, but not yet published, is *not* "publicly accessible." The law requires the PTO to *bar* public access. The Patent Act declares that a patent application "*shall* be kept *in confidence* by the Patent and Trademark Office" and (subject to exceptions irrelevant here) that "no information concerning the [application shall be] given without authority of the applicant." 35 U.S.C. § 122(a) (emphasis added). After an 18-month period, if the application is still "pending," it generally is published. § 122(b)(1), (b)(2)(A)(i). *At that point* the application becomes accessible to the public, and may thereafter be effective as a prior art printed publication. But not before.

Here, the Martin application was published on October 21, 2004, after the February 25, 2004 critical date. *See* Lynk Labs Br. 57. On and before the critical date, the public could not access Martin. Neither petitioner Samsung nor the Board ever suggested otherwise. Consequently, Martin is not a prior art "printed publication" as to the challenged patent.[3]

---

[3] The same is true of the Abadeer reference in amicus VLSI's case. Abadeer was published on November 16, 2006. *Patent Quality Assurance*, IPR2021-01229, Ex. 1004 at 1. VLSI's patent's critical date was no later than August 30, 2006, the date of the application for the challenged patent. *Id.*, Ex. 1001 at 1. On August 30, 2006, no member of the public could access Abadeer. Neither the Board nor the petitioners in the VLSI IPR ever suggested otherwise.

This Court's precedents make that conclusion inescapable. Even documents *available* for public inspection, or *provided to other persons,* fail to qualify as "printed publications" when they are not sufficiently available to the public. The reference in *Lister*, for example, was registered with the U.S. Copyright Office, such that a person "seeking to view the [document] would have been able to do so by visiting the Copyright Office." 583 F.3d at 1309-10, 1312-17. But there was no evidence that "'persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence'" actually "would have been able to learn of its existence and potential relevance prior to the critical date." *Id.* at 1311, 1314-17. As a result, the reference was not "publicly accessible prior to the critical date" and so did not qualify as a prior art "printed publication." *Id.* at 1314-17.

In *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319 (Fed. Cir. 2009), the inventor distributed documents to colleagues and companies with whom he hoped to commercialize the invention. *Id.* at 1333-35. Although none of the recipients owed a formal "obligation of confidentiality," the documents were distributed under a reasonable "expectation of confidentiality" based on "professional norms." *Id.* at 1333-35. This Court held that was enough to defeat "public accessibility," and that the documents thus were not "prior art printed publications." *Id.* at 1332-35.

*Lister* and *Cordis* make this an easy case. The document filed with the Copyright Office in *Lister* would have been made "available upon request to be

inspected by the public" if someone had known to ask for it.  583 F.3d at 1313.  But an unpublished patent application must "be kept in confidence by the Patent and Trademark Office," which generally may disclose "no information" about it even if asked.  35 U.S.C. § 122(a).  The documents in *Cordis* were shared "without a legal obligation of confidentiality."  561 F.3d at 1333.  But the PTO *does* have a legal obligation to keep unpublished patent applications confidential.  *See* § 122(a).  If the documents in *Lister* and *Cordis* were not publicly accessible and thus not prior art printed publications, then *a fortiori* unpublished patent applications like Martin and Abadeer are not either.

\*    \*    \*

Those principles lead to a straightforward conclusion.  Patents may be challenged in IPR "only on the basis of prior art consisting of patents or printed publications."  35 U.S.C. § 311(b).  References like Martin and Abadeer—patent applications published only *after* the challenged patent's critical date, and ultimately abandoned—are neither.  They are not prior art "patents," because they never issued as patents.  *Brown*, 90 U.S. at 210-11.  And they are not prior art "printed publications," because they were "not publicly accessible before the critical date."  *Acceleration Bay*, 908 F.3d at 772.  They accordingly cannot serve as the basis for challenging patents in IPR.  The Board's contrary decisions—here and in amicus VLSI's case—must be reversed.

## II.    THE BOARD'S CONTRARY DECISION DEFIES THE STATUTE

The Board nowhere disputed that Martin was not publicly accessible before the critical date here.  Departing from §311(b)'s clear text, it turned to a different provision, pre-AIA 35 U.S.C. §102(e)(1) (2006).  Under that provision, the PTAB ruled, an "application for patent" like Martin can qualify as prior art in an IPR as of its *filing* date rather than its *publication* date.  Appx10-12.  In amicus VLSI's case, the Board ruled that Abadeer was available prior art in the IPR for the same reason. *Patent Quality Assurance*, IPR2021-01229, Paper 129 at 27-29.[4]

The Board's ruling defies §311(b)'s text.  Under that statute, "only" prior art "patents" and prior art "printed publications" may serve as the basis for challenging patents "in an inter partes review." §311(b).  Martin (like Abadeer) does not qualify as either.  That it may qualify as a *different* type of prior art—an "application for patent"—that could be asserted in *other* kinds of proceedings is irrelevant.  To the contrary, Congress's decision to use different language in §311(b) makes clear that Congress meant §311(b) to have a different scope.

---

[4] The pre-AIA version of §102 applies here and in amicus VLSI's case because the challenged patent in each case was filed before the AIA's effective date. *See Acceleration Bay*, 908 F.3d at 772 n.6; Lynk Labs Br. 57; Appx7 n.1, Appx10-12; *Patent Quality Assurance*, IPR2021-01229, Ex. 1001 at 1.  The principles governing printed publications, however, apply equally to the current version of the statute.

A. **Congress Limited IPRs to Prior Art Patents and Printed Publications While Excluding Other Categories of Prior Art, Including Applications for Patent Under Pre-AIA § 102(e)(1)**

1. Pre-AIA § 102 defines categories of prior art that may be asserted in different types of proceedings. Those categories of prior art include:

- "patent[s],"

- "printed publication[s],"

- inventions "known or used by others in this country,"

- inventions "in public use or on sale in this country," and

- "application[s] for patent."

Pre-AIA § 102(a)-(b), (e)(1). The current version of § 102 similarly lists "patent[s]," "printed publication[s]," inventions "in public use, on sale, or otherwise available to the public," and "application[s] for patent" as different categories of prior art. § 102(a)(1)-(2).

In some contexts—such as infringement litigation—prior art in any of those categories may lawfully be the basis for challenging a patent.[5] "[I]n an inter partes review," however, Congress specified that only *two* of those categories may be the basis for challenging a patent: "patents" and "printed publications." § 311(b).

---

[5] *See, e.g.*, 35 U.S.C. § 282(b)(2) (allowing defendants in infringement actions to assert invalidity "on any ground specified in part II [including § 102] as a condition for patentability"); § 321(b) (allowing a "petitioner in a post grant review" to challenge a patent "on any ground that could be raised under" § 282(b)(2)-(3)).

Congress could have included other categories of prior art, such as "applications for patent" (or perhaps "applications for patent" meeting certain criteria).  But it did not.

That decision must be respected.  "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"  *Russello v. United States*, 464 U.S. 16, 23 (1983).  In § 102 of the Patent Act (both pre- and post-AIA), Congress listed "patent[s]," "printed publication[s]," and "application[s] for patent" as distinct categories of prior art that might be used to challenge patents.  But in § 311(b), Congress provided that only "patents" and "printed publications" may be the basis for challenging patents "in an inter partes review."

The Board's decision cannot be reconciled with Congress's deliberate exclusion of "application[s] for patent" from the categories of prior art that may be the basis for an IPR.  "'When Congress includes a specific term in one section of a statute but omits it in another section of the same Act, it should not be implied where it is excluded.'"  *Richard v. United States*, 677 F.3d 1141, 1147 n.11 (Fed. Cir. 2012).  The Board, however, did just that: It read the term "applications for patent" into § 311(b), despite Congress's choice to exclude it.

Congress used different terms in different provisions—"application for patent" and "printed publication"—because it "underst[ood] the two terms to be

distinct." *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 373 (2019). Indeed, that distinction stretches back over a century, to the first patent statute to use the term "printed publication."[6] Construing that term, courts and learned treatises alike agreed that a "mere application for a patent" is *not* a "printed publication." *Brown*, 90 U.S. at 210-11 (citing Act of July 4, 1836, ch. 357, § 7, 5 Stat. 117, 119-20); *see* Lynk Labs Br. 60-61 (collecting cases); *Nw. Fire Extinguisher Co. v. Philadelphia Fire Extinguisher Co.*, 18 F. Cas. 394, 398 (E.D. Pa. 1874) (patent applications "lack[ed] the essential quality of a publication" because they were not "made accessible to the public generally"). As Robinson explained in his treatise more than 130 years ago, a "description in an application for a patent, filed in the Patent Office, is not a publication"; a "publication" must be "[w]ithin reach of the public" and "[p]ublished before the date of the later invention." 1 William C. Robinson, *The Law of Patents for Useful Inventions*, §§ 325, 327, at 446-47, 448 n.4 (1890).[7]

The Board's effort to conflate "application for patent" with "printed publication" thus does not merely defy the ordinary meaning of those terms. It defies more than a century of understanding that the former is not a printed publication—

---

[6] "The phrase 'printed publication' first appeared in the Patent Act of 1836." John E. Vick, Jr., *Publish and Perish: The Printed Publication as a Bar to Patentability*, 18 AIPLA Q.J. 235, 238 (1990).

[7] Historically, as today during the 18-month period before publication, *see* 35 U.S.C. § 122(a)-(b), patent applications were generally "preserved in secrecy." 2 Robinson, *supra,* § 553, at 163-64.

an understanding Congress presumably was aware of when it enacted the AIA. Where, as here, "a statutory term is obviously transplanted from another legal source, it brings the old soil with it." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (internal quotation marks omitted).

2. The statute's history reinforces that conclusion. Congress first recognized patent applications as a category of prior art when it enacted pre-AIA § 102(e)(1) in 1999. *See* American Inventors Protection Act of 1999, Pub. L. No. 106-113, tit. IV, § 4505, 113 Stat. 1501, 1501A-552, 1501A-565. Congress did so *not* by redefining the term "printed publication" to encompass patent applications, but by recognizing a new, distinct category of prior art: "application[s] for patent." *Id.*

In the same enactment, moreover, Congress created inter partes reexamination, the direct predecessor of inter partes review. Pub. L. No. 106-113, tit. IV, § 4604, 113 Stat. at 1501A-567 to -570; *see Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1371 (2018) ("The America Invents Act replaced inter partes reexamination with inter partes review."). But Congress did *not* include "applications for patent" as a permissible basis for challenging patents in inter partes reexamination. Instead—as with IPRs under current § 311(b)— Congress limited inter partes reexaminations to "prior art consisting of patents or

printed publications."  35 U.S.C. §301(a) (2000); *see* Pub. L. No. 106-113, §4604, sec. 311(a), 113 Stat. at 1501A-567 (codified at 35 U.S.C. §311(a) (2000)).[8]

Congress's design could hardly be plainer:  In the very same enactment that Congress *added* patent applications as a category of prior art in pre-AIA §102, it *excluded* them from the categories of prior art that could be the basis for inter partes reexamination under pre-AIA §311.  Congress then carried that exclusion forward when it replaced inter partes reexamination with inter partes review: It allowed challengers to seek IPR "only" on the basis of prior art "patents" and "printed publications," §311(b), and *not* on the basis of "applications for patent."

## B.    Prior Art "Printed Publications" that May Serve as the Basis for an IPR Must Be Publicly Accessible Before the Critical Date

Congress excluded "applications for patent" from the categories of prior art that may serve as the basis for an IPR challenge.  Accordingly, a patent application may serve as the basis for an IPR only if it falls within one of the two categories of prior art that *may* be the basis for an IPR challenge—namely, prior art "patents" and "printed publications."  35 U.S.C. §311(b).  The Board declared that Martin in this case, and Abadeer in amicus VLSI's case, qualified as prior art "printed publica-tions."  Appx11; *Patent Quality Assurance*, IPR2021-01229, Paper 129 at 28.  To

---

[8] The inter partes reexamination statute provided that an inter partes reexamination must be based on "prior art cited under the provisions of section 301," Pub. L. No. 106-113, tit. IV, §4604, sec. 311(a), 113 Stat. at 1501A-567, which in turn referred to "prior art consisting of patents or printed publications," 35 U.S.C. §301 (2000).

be a prior art "printed publication," however, a reference must have been "publicly accessible before the critical date." *Acceleration Bay*, 908 F.3d at 772. A patent application filed before the critical date, but not published or otherwise publicly available until *after* the critical date, does not qualify.

The Board made no effort to reconcile its decision with this Court's voluminous precedent holding that only references that were publicly accessible before the critical date qualify as prior art "printed publications." *See* pp. 5-7, *supra* (collecting cases). It refused to consider that precedent. The Board waved away Lynk Labs' citation of *Samsung Electronics Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363 (Fed. Cir. 2019), because "that case deals with public accessibility under § 102(b)." Appx11. But *Infobridge* "deal[t] with public accessibility," Appx11, because "public accessibility . . . is *the 'touchstone'*" for "what constitutes a 'printed publication,'" *Infobridge*, 929 F.3d at 1369 (emphasis added). The Board inexplicably deemed *irrelevant* the very thing—public accessibility—that this Court has repeatedly held *determinative* in the "printed publication" analysis.

To the extent the Board meant to suggest that "printed publication" in § 102 means something different than "printed publication" in § 311(b), *see* Appx11, that is wrong. *Infobridge* itself makes that clear: It involved IPRs governed by § 311(b), and looked to § 102 to determine whether a reference qualified as a prior art "'printed publication.'" 929 F.3d at 1365, 1368-69 & n.2 (quoting 35 U.S.C. § 102(b) (2006)).

The "normal presumption," moreover, is that "when Congress uses a term in multiple places within a single statute, the term bears consistent meaning throughout." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019). There is no reason to depart from that presumption here. Section 311(b) expressly invokes § 102, declaring that IPR challenges are permissible "only on a ground that could be raised *under section 102* or 103 and only on the basis of prior art consisting of patents or *printed publications*." § 311(b) (emphasis added). That textual cross-reference makes it inescapable that "printed publication" means the same thing in both provisions.

Additionally, Congress included the term "printed publications" in § 311(b) against a consistent backdrop of judicial opinions interpreting the "'statutory phrase "printed publication" . . . to mean that before the critical date the reference must have been sufficiently accessible to the public interested in the art.'" *Cronyn*, 890 F.2d at 1160; *see* pp. 5-7, *supra*. "When 'all (or nearly all) of the' relevant judicial decisions have given a term or concept a consistent judicial gloss," courts "presume Congress intended the term or concept to have that meaning when it incorporated it into a later-enacted statute." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 243 (2011). That is the case here. When the AIA was enacted in 2011 (and when its predecessor was enacted in 1999), this Court had consistently held that "public accessibility" before the critical date is the "touchstone" of a prior art "printed publication." *E.g.*, *Lister*, 583 F.3d at 1311; *Hall*, 781 F.2d at 898-99; *Bayer*, 568 F.2d at 1359. "In

light of this settled pre-AIA precedent on the meaning of ['printed publication,'] we presume that when Congress reenacted the same language in the AIA, it adopted the earlier judicial construction of that phrase." *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628, 633-34 (2019).

### C.    The Board's Remaining Rationales Are Unpersuasive

1.    In the decision below, the Board relied primarily on a comparison between § 311(b) and the covered business method review (CBM) statute. Appx11. The Board observed that the CBM statute "explicitly limits challenges [to those] based on 'prior art that is described by [pre-AIA] section 102(a),'" while "§ 311(b) permits [IPR] challenges 'on the basis of prior art consisting of patents or printed publications.'" Appx11 (quoting Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18(a)(1)(C)(i), 125 Stat. 284, 330 (2011), and 35 U.S.C. § 311(b)); *see* Pub. L. No. 112-29, § 3(n)(1), 125 Stat. at 293. "[U]nlike CBMs," the Board thus stated, "IPRs are not limited to prior art challenges solely under [pre-AIA] § 102(a)." Appx11. From that, however, the Board announced that IPRs therefore necessarily must allow challenges based on applications for patent under pre-AIA *§ 102(e)(1)*. Appx11.

That simply does not follow. It is true that "IPRs are not limited to prior art challenges solely under [pre-AIA] § 102(a)." Appx11. But that is because § 311(b) allows IPR challenges based on "patents" and "printed publications," categories that appear in *both* pre-AIA § 102(a) *and* pre-AIA § 102(b). It would not make sense for

Congress to declare that IPRs are limited to pre-AIA § 102(a) prior art, as that would exclude prior art "patents" and "printed publications" under § 102(b) that Congress sought to include.  The fact that § 311(b) identifies eligible prior art in IPRs by naming two specific categories of prior art ("patents" and "printed publications"), rather than by cross-referencing some other provision, does not justify rewriting § 311(b) to add a *third* category of prior art ("applications for patent") that § 311(b) never mentions.

The Board also overlooked that pre-AIA § 102(a) extends *beyond* patents and printed publications.  It includes "invention[s] . . . known or used by others in this country."  Pre-AIA § 102(a).  But Congress did not include that prior art in § 311(b).  And that explains Congress's choice to draft § 311(b) differently from the CBM statute: Congress sought to limit IPRs to patents and printed publications.  Incorporating pre-AIA § 102(a) by reference would not have achieved that goal; it would have swept in a raft of other prior art that Congress wanted to exclude.  That Congress chose *not* to extend IPRs to *all pre-AIA § 102(a)* prior art in no way suggests that it intended IPRs to extend to pre-AIA *§ 102(e)(1)* prior art.  If anything, it reinforces that Congress limited IPRs to a *subset* of pre-AIA § 102 prior art—one that encompasses only patents and printed publications, not applications for patent.

The CBM statute ultimately undermines rather than supports the Board's position.  It shows that Congress knew how to define the prior art that can be used

20

as the basis for a PTO proceeding by cross-referencing another statutory provision. If Congress wanted to allow IPR challenges based on patent applications that were filed before, but published after, the critical date, it could have authorized IPRs on the basis of "prior art that is described by section 102(e)(1)." Instead, it allowed IPRs only on the basis of prior art patents and printed publications—categories that have long been understood to exclude such applications.

2.     While refusing to consider this Court's many precedential decisions holding that prior art "printed publications" must be publicly accessible before the critical date, *see* pp. 5-7, *supra*, the Board seized on the non-precedential decision in *Purdue Pharma L.P. v. Iancu*, 767 F. App'x 918 (Fed. Cir. 2019). Appx11-12. But as the Board conceded, Appx11, *Purdue* did not address whether a patent application published after the critical date qualifies as a prior art "printed publication." That issue simply was not raised. Instead, the patent owner argued that the reference in question was not prior art based "entirely" on its contention that the challenged patent was entitled to an earlier priority date than the Board accorded it. *Purdue*, 767 F. App'x at 923, 925. A non-precedential decision where the legal issue here was neither raised nor decided cannot overcome the mountain of precedent discussed above. *Cf. Brecht v. Abrahamson*, 507 U.S. 619, 630-31 (1993) (issue assumed by Court in prior cases is not precedential for purposes of *stare decisis*); *Automated*

*Merch. Sys. v. Lee*, 782 F.3d 1376, 1381 (Fed. Cir. 2015) (even otherwise precedential decisions are not "precedential" on issues they "d[o] not discuss").

In amicus VLSI's case, the Board also invoked *Becton, Dickinson & Co. v. Baxter Corp. Englewood*, 998 F.3d 1337 (Fed. Cir. 2021). *See Patent Quality Assurance*, IPR2021-01229, Paper 129 at 28-29. *Becton* does not support the Board's conclusion either. In *Becton*, a *patent* asserted as prior art in an IPR was given the benefit of its filing date under pre-AIA § 102(e)(2). *See* 998 F.3d at 1347 & n.7. The Board declared that *Becton* "supports that *inter partes* reviews properly consider prior-art references with effective dates prior to their actual publication dates." *Patent Quality Assurance*, IPR2021-01229, Paper 129 at 29.

But the scope of § 311(b) was not disputed in *Becton*. *See* Lynk Labs Br. 65. And the reference at issue was a "patent," one of the two categories of prior art identified by § 311(b). As a result, *Becton* at most supports the proposition that, when *patents* are asserted in IPRs, they may be treated as prior art as of their filing dates. Section 311(b) expressly allows IPR challenges based on prior art "patents." § 311(b). And under pre-AIA § 102(e)(2), a "patent" may be treated as prior art as of its filing date, even if it was not made public until later. *See Becton*, 998 F.3d at 1345 n.7 (citing *Hazeltine Rsch., Inc. v. Brenner*, 382 U.S. 252, 254-56 (1965)).

But Martin (and Abadeer in VLSI's case) never issued as *patents*. As a result, they cannot claim the benefit of the rule that "patents" can be treated as prior art as

of their filing date, even if published later. Martin (and Abadeer) can be the basis for an IPR only if they qualify as prior art "printed publications." §311(b). And settled law holds that references do not qualify as prior art printed publications unless they are publicly accessible *before* the critical date. *See* pp. 5-7, *supra*.

3.    To the extent Samsung might argue that Martin qualifies as a "printed publication" because it was *eventually* published *after* the critical date, that argument would fail. To qualify as a "printed publication" that may serve as the basis for an IPR, the reference must itself be a "prior art printed publication" "'*existing at the time of the patent application [for the challenged patent]*.'" *Qualcomm*, 24 F.4th at 1374-75 (emphasis in original) (quoting *Return Mail, Inc. v. U.S. Postal Serv.*, 139 S. Ct. 1853, 1860 (2019)). In *Acceleration Bay*, for example, this Court affirmed that a reference was not a prior art "printed publication" even if it *later* became publicly available via "searches conducted years after the critical date." 908 F.3d at 773-74. Likewise, in *Infobridge*, the Court held that, even if the petitioner "could establish public accessibility" of a reference "after the relevant critical date," the reference "could [not] serve as prior art." 929 F.3d at 1370; *see also Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 139 (Fed. Cir. 1986) (mailed document becomes "effective as a printed publication under §102 on the date it reaches the addressee," and does not retroactively become effective as prior art as of the earlier "date of mailing"). So too here: Because Martin was not publicly

accessible before the critical date, it is not a "prior art printed publication" that can be the basis for this IPR. *Qualcomm*, 24 F.4th at 1375.[9]

*   *   *

The Board's decisions in this case and the VLSI IPR reflect an apparent belief that, because patent applications qualify as prior art as of their filing dates *in some contexts*, they can be treated as prior art as of their filing dates *in an inter partes review*. But Congress made a different choice. It authorized inter partes reviews only on the basis of prior art "patents" and "printed publications." Those long-established categories of prior art have well-understood definitions. Neither encompasses patent applications that were published only *after* the critical date. The Board might think it would "mak[e] for better policy" if IPRs encompassed such applications. *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018). But "policy considerations" do not license the Board to disregard the statute Congress wrote. *Id.*

## CONCLUSION

Patent applications that never issued as patents and were not publicly accessible before the critical date are neither prior art "patents" nor prior art "printed publications," and thus may not serve as the basis for an inter partes review. 35 U.S.C. §311(b). The Board's contrary decision should be reversed.

---

[9] Martin might qualify as a prior art printed publication in *other* cases, where the critical date *postdates* its publication. But that is immaterial to whether it is a prior art printed publication *here*.

January 17, 2024                    Respectfully submitted,

                                   /s/ Jeffrey A. Lamken

Jordan A. Rice                     Jeffrey A. Lamken
MOLOLAMKEN LLP                         *Counsel of Record*
300 N. LaSalle Street, Suite 5350  Lucas M. Walker
Chicago, IL  60654                 MOLOLAMKEN LLP
(312) 450-6700 (telephone)         The Watergate, Suite 500
(312) 450-6701 (fax)               600 New Hampshire Avenue, N.W.
                                   Washington, D.C.  20037
                                   (202) 556-2000 (telephone)
                                   (202) 556-2001 (fax)
                                   jlamken@mololamken.com


            *Counsel for Amicus Curiae VLSI Technology LLC*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-2346

**Short Case Caption:** Lynk Labs, Inc. v. Samsung Electronics Co., Ltd.

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6045 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/17/2024          Signature: /s/ Jeffrey A. Lamken

                          Name: Jeffrey A. Lamken

Save for Filing