Appeal No. 2023-2346

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

**LYNK LABS, INC.,**
*Appellant,*

v.

**SAMSUNG ELECTRONICS CO., LTD.,**
*Appellee,*

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR
INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE,**
*Intervenor.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2022-00149

**BRIEF FOR INTERVENOR—DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

FARHEENA Y. RASHEED
Acting Solicitor
AMY J. NELSON
Acting Deputy Solicitor
PETER J. AYERS
Senior Counsel, Patent Law & Litigation
MICHAEL S. FORMAN
MAUREEN D. QUELER
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

May 3, 2024

*Attorneys for the Director of the
United States Patent and Trademark
Office*

**Claim 7 in U.S. Patent No. 10,687,400:**

A lighting system comprising:

an LED circuit array comprising an LED circuit comprising a plurality of LEDs connected in series;

a capacitor;

a bridge rectifier configured to receive an input AC voltage from a mains power source;

a driver connected to the bridge rectifier and configured to provide a rectified output AC voltage to the LED circuit array;

wherein a forward voltage of the LEDs of the LED circuit array matches the rectified input AC voltage output of the driver; and

wherein the LED circuit array, the capacitor, the bridge rectifier, and the driver are all mounted on a single substrate.

Appx139 at col. 27, ll. 48-62.

## TABLE OF CONTENTS

I.   Introduction and Statement of the Issue...............................................1

II.  Statement of the Case...........................................................................3

    A. Statutory Background ...................................................................3

      1. Historical Underpinning of the Treatment of Patent Applications as Prior Art ...............................................................................3

      2. In Reexamination Proceedings, the USPTO Has Always Construed the Term "Printed Publication" to Include § 102(e) Prior Art ................5

      3. The American Inventors Protection Act Required Publication of Patent Applications and Amended § 102(e) to Establish that the Prior Art Date of a Published Patent Application is the Application's Filing Date ...............................................................................7

      4. Congress Sets the Scope of Inter Partes Review as Identical to the Scope of Reexamination ...........................................................9

    B. Procedural Background ........................................................10

III. Summary of the Argument...............................................................12

IV. Argument..............................................................................................15

    A. Standard of Review ...............................................................15

    B. A Published Patent Application is a "Printed Publication" Under § 311(b) as of the Application's Filing Date................................15

      1. The Text, Structure, and Purpose of the Patent Act Support the Conclusion that Published Patent Applications Fall Within the Scope of § 311(b).....................................................................15

      2. Congress Used "Patents or Printed Publications" to Distinguish Document-Based Prior Art from Other Types of Prior Art ..................20

C. The USPTO's Longstanding Inclusion of Published Patent Applications Under the Category of "Printed Publications" Supports the Board's Decision ..................................................................23

D. The Arguments Raised by Lynk and VLSI Lack Merit ...........................25

E. Adopting Lynk's Reading of § 311(b) Would Lead to Anomalous Results ........................................................................................28

V. Conclusion........................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Abbott Lab'ys v. Cordis Corp.*, 710 F.3d 1318 (Fed. Cir. 2013) ...............................9

*Alexander Milburn Co. v. Davis Bournonville Co.*, 270 U.S. 390 (1926)...... 3, 4, 17

*Amgen Inc. v. Sanofi*, 872 F.3d 1367 (Fed. Cir. 2017) ...........................................23

*Baxter Int'l, Inc. v. COBE Lab'ys, Inc.*, 88 F.3d 1054 (Fed. Cir. 1996) ..................5

*Becton, Dickinson & Co. v. Baxter Corp. Englewood*, No. IPR2019-00119, 2019 WL 1979703 (P.T.A.B. May 3, 2019) ................................................................27

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) .......................................................20

*Colonial Press Int'l, Inc. v. United States*, 788 F.3d 1350 (Fed. Cir. 2015) ...........16

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986)....................24

*Crandon v. United States*, 494 U.S. 152 (1990) .....................................................16

*Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016) ..........................................9

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375 (Fed. Cir. 2015) ...................................................................................................................23

*Elsner, In re*, 381 F.3d 1125 (Fed. Cir. 2004) ........................................................19

*Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321 (Fed. Cir. 2020)..15

*Fluor Tec, Corp. v. Kappos*, 499 F. App'x 35 (Fed. Cir. 2012)..............................23

*Hall, In re*, 781 F.2d 897 (Fed. Cir. 1986)..............................................................19

*Hazeltine Rsch., Inc. v. Brenner*, 382 U.S. 252 (1965) ...................................... 4, 17

*Ingalls Shipbuilding, Inc. v. Dalton*, 119 F.3d 972 (Fed. Cir. 1997)......................16

*King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991) ............................................ 16, 20

*Klopfenstein, In re*, 380 F.3d 1345 (Fed. Cir. 2004) .................................................18

*LeGrice, In re*, 301 F.2d 929 (CCPA 1962) ...........................................................19

*Mulder v. McDonald*, 805 F.3d 1342 (Fed. Cir. 2015)............................................16

*Nantucket, Inc., In re*, 677 F.2d 95 (CCPA 1982) ...................................................16

*NLRB v. Bell Aerospace Co.*, 416 U.S. 267 (1974) .................................................24

*NLRB v. Lion Oil Co.*, 352 U.S. 282 (1957) ...........................................................16

*Nw. Fire Extinguisher Co. v. Philadelphia Fire Extinguisher Co.*, 18 F. Cas. 394 (E.D. Pa. 1874).............................................................................................27

*Purdue Pharma L.P. v. Iancu*, 767 F. App'x 918 (Fed. Cir. 2019)................. 12, 23

*Quad Environmental Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870 (Fed. Cir. 1991) .................................................................................................... 6, 21

*Qualcomm Inc. v. Apple Inc.*, 24 F.4th 1367 (Fed. Cir. 2022) ...................... passim

*Return Mail, Inc. v. United States Postal Serv.*, 139 S. Ct. 1853 (2019) ...............28

*Saxbe v. Bustos*, 419 U.S. 65 (1974)........................................................................24

*Schlittler, In re*, 234 F.2d 882 (CCPA 1956)......................................... 4, 17, 19, 28

*Swanson, In re*, 540 F.3d 1368 (Fed. Cir. 2008)................................................ 16, 20

*Timex V.I., Inc. v. United States*, 157 F.3d 879 (Fed. Cir. 1998) ...........................29

*Uniloc 2017 LLC v. Hulu, LLC*, 966 F.3d 1295 (Fed. Cir. 2020) ..........................10

*Washington All. of Tech. Workers v. United States Dep't of Homeland Security*, 50 F.4th 164 (D.C. Cir. 2022)...................................................................................24

*Wyer, In re*, 655 F.2d 221 (CCPA 1981) ................................................................19

**Statutes**

35 U.S.C. § 102(d) ...............................................................1

35 U.S.C. § 102(e)(1)................................................... 1, 19, 25, 27

35 U.S.C. § 102(e)(2)..............................................................19

35 U.S.C. § 122(b) .......................................................... 1, 7, 17, 19

35 U.S.C. § 301(a)(1)...............................................................10

35 U.S.C. § 302...................................................................10

35 U.S.C. § 311(b) ..................................................... 10, 16, 21, 24

Pub. L. No. 106–113, 113 Stat. 1501 (1999) ..............................7, 8

Pub. L. No. 112-59, 125 Stat. 284 (2011) ..................................9

Pub. L. No. 82–593, 66 Stat. 792 (1952) ...................................5

Pub. L. No. 96–517, 94 Stat. 3015 (1980) ............................. 6, 20

**Other Authorities**

H.R. Rep. 112–98 (2011) ..................................................... 9, 21

H.R. Rep. 96-1307 (1980)................................................... 6, 21

H.R. Rep. No. 106-287 (1999)............................................. 8, 29

MPEP § 1128 (9th ed. Rev. 07.2022, Feb. 2023) ....................17

MPEP § 2258 (4th ed. Rev. 7, July 1981) ...............................7

MPEP § 2258 (8th ed. Aug. 2001)....................................... 8, 23

MPEP § 2658 (8th ed. Rev. 2, May 2004)...............................9

Peter S. Menell et al., Fed. Judicial Ctr., *Patent Case Management Judicial Guide* § 14.3.4.1.3 (3d ed. 2016) ........................................................................................5

## STATEMENT OF RELATED CASES

Beyond the case identified in Appellant's opening brief, the Director is not aware of any other appeal in connection with the patent at issue in this case that has previously been before this Court or any other related cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## I.   INTRODUCTION AND STATEMENT OF THE ISSUE

It is black letter law that a published patent application is deemed prior art that can anticipate or render obvious any patent that post-dates the *filing* of that application.  35 U.S.C. § 102(e)(1) (2002)[1]; *see also* 35 U.S.C. § 102(d).  This appeal raises the question of whether Congress created an anomalous exception to that general rule in the context of inter partes review proceedings, allowing the Patent Trial and Appeal Board to treat published applications as prior art not earlier than their *publication* date, rather than their filing date.  Because patent applications are normally published 18 months after they are filed, *see* 35 U.S.C. § 122(b), an IPR-specific rule for determining the priority date of a published application would substantially reduce the universe of prior art that could be considered in the IPR process.  For as long as patent applications have been published, the USPTO has consistently applied the generally applicable priority rule for patent applications in the context of reexaminations and inter partes review, and there is no reason to think Congress intended otherwise.

Appellant Lynk Labs insists that Congress implicitly departed from background principles of patent law when it specified that a petitioner seeking inter

---

[1] Because this case involves a pre-AIA patent, this brief focuses on the pre-AIA version of § 102.  All future references to 35 U.S.C. § 102(e) pertain to the pre-AIA version of the statute.  After passage of the AIA, there is no longer a subsection (e) in § 102.

partes review can request to cancel patent claims "only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications."  Lynk reasons that when Congress crafted this limitation, it must have declined to afford published patent applications their usual treatment and allowed for them to be considered, if at all, only as of their publication date (i.e., the priority date applicable to publications other than patent applications, such as journal articles).  But this argument misreads the relevant text, conflating the separate inquiries of whether a patent application is "prior art" and whether it a "printed publication."  Under background principles, a published patent application is "prior art" as of its filing date.  And, so long as it publishes before the IPR petition commences, it is also a "printed publication."  Nothing in the statute transforms the publication date of the application into its effective prior art date.

This conclusion is rooted not only in the statutory framework and longstanding agency practice, but also legislative intent.  The legislative history of both the reexamination statute and the AIA illustrates a clear intention to streamline these proceedings by restricting them to document-based prior art challenges to the exclusion of more complex evidentiary challenges like those based on prior use or commercial sales.  A published patent application, a form of document-based prior art, is exactly the type of document that Congress intended

2

when limiting the proceedings to "prior art consisting of patents or printed publications." It is that motive—not a desire to anomalously curtail the effective priority date of published patent applications—that explains the relevant language in 35 U.S.C. § 311(b).

## II.  STATEMENT OF THE CASE

### A.  Statutory Background

#### 1. Historical Underpinning of the Treatment of Patent Applications as Prior Art

The concept of a published patent application having a distinct prior art date, i.e., the application's filing date, finds its origins in early 1900's when the Supreme Court first established that an earlier-filed patent could serve as prior art as of its filing date, despite not issuing as a patent until after the filing date of the challenged patent. *Alexander Milburn Co. v. Davis Bournonville Co.*, 270 U.S. 390 (1926). In *Alexander Milburn*, the defendant alleged that the claims of the asserted Whitford patent were invalid based on a patent to Clifford, who had filed his patent application first, even though the Clifford patent ultimately did not issue until after the filing of the challenged Whitford patent. *Id.* at 399.

The Supreme Court held that the Clifford patent, which was the earlier-filed patent, could serve as prior art even though it had not yet issued (i.e., was not patented) when the Whitford patent was filed. *Id.* at 401. The Court rejected the notion that this case should be treated any differently than the scenario where,

3

instead of filing a patent application, Clifford had published his invention in a periodical. *Id.* at 400. As the Court explained, "Clifford had done all that he could do to make his description public" and "[t]he delays of the patent office ought not to cut down the effect of what has been done." *Id.* at 401. The Court found "no reason in the words or policy of the law for allowing Whitford to profit by the [Patent Office's] delay and make himself out to be the first inventor when he was not so in fact." *Id.* Thus, the Court in *Alexander Milburn* found that "the filing of a patent application on which a patent is later granted makes the invention disclosed public property as much as an actual publication in a periodical." *In re Schlittler*, 234 F.2d 882, 887 (CCPA 1956), overruled on other grounds by *In re Borst*, 345 F.2d 851 (CCPA 1965). The Supreme Court's decision was consistent with the "fundamental rule . . . that the patentee must be the first inventor." *Alexander Milburn Co.*, 270 U.S. at 402.

Congress later codified *Alexander Milburn* in 35 U.S.C. § 102(e). *Hazeltine Rsch., Inc. v. Brenner*, 382 U.S. 252, 254-55 (1965) (concluding that "Congress showed its approval of the holding in *Milburn*" and, as a result, "the disclosures contained in [a] patent become part of the prior art as of the time the application was filed, not . . . at the time the patent is issued"). Section 102(e), as originally enacted in the Patent Act of 1952, provided that an applicant cannot obtain a patent if "the invention was described in a patent granted on an application for patent by

4

another filed in the United States before the invention thereof by the applicant for patent . . . ."  Pub. L. No. 82–593, 66 Stat. 792, 797 (1952).  As that language demonstrates, Congress keyed the prior art effect of a patent under § 102(e) to the date the application was filed, not when the patent issued.

Accordingly, both Supreme Court precedent and the language of § 102(e) establish that a patent is prior art as of the date the application is filed, prior to the time it becomes publicly accessible as an issued patent.  One commentor noted that "[t]he fact that the knowledge [in the patent application] was not publicly known is outweighed by the Patent Office's knowledge of the invention and its unique role in making patent determinations."  Peter S. Menell et al., Fed. Judicial Ctr., *Patent Case Management Judicial Guide* § 14.3.4.1.3 (3d ed. 2016); *see also Baxter Int'l, Inc. v. COBE Lab'ys, Inc.*, 88 F.3d 1054, 1062 (Fed. Cir. 1996) (Newman, J., dissenting) (stating that § 102(e) "reflects a careful balancing of public policies, for it is an exception to the rule that 'prior art' is that which is available to the public").

## 2. In Reexamination Proceedings, the USPTO Has Always Construed the Term "Printed Publication" to Include § 102(e) Prior Art

Following *Milburn* and the 1952 Patent Act, a patent could be used as prior art as of its filing date in litigation proceedings and during examination.  In 1980, Congress established, for the first time, an ex parte reexamination procedure for

challenging the validity of an issued patent before the USPTO.  Pub. L. No. 96–517, 94 Stat. 3015 (1980).  Under the statute, any person could file a request for reexamination based on "prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent."  *Id.* (codified as 35 U.S.C. § 301).

This new procedure sought to "permit any party to petition the patent office to review the efficacy of a patent, subsequent to its issuance, on the basis of new information about preexisting technology which may have escaped review at the time of the initial examination."  H.R. Rep. 96-1307 at 3 (1980).  Reexamination would "permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation."  *Id.* at 3-4.  Congress intended for reexamination to "help restore confidence in the effectiveness of our patent system" by "assuring the kind of certainty about patent validity which is a necessary ingredient of sound investment decisions."  *Id.* at 4.  "The congressional purpose in restricting reexamination to printed documents, 35 U.S.C. § 301, was to provide a cheaper and less time-consuming alternative way to challenge patent validity on certain issues."  *Quad Environmental Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 875 n.7 (Fed. Cir. 1991) (citing H.R. Rep. 96-1307 at 4 (1980)).

After the introduction of ex parte reexamination, the USPTO amended the Manual of Patent Examining Procedure ("MPEP") to add Chapter 2200, which covers "Citation of Prior Art and Reexamination of Patent."  In the first version of Chapter 2200, a section entitled "Scope of Reexamination" stated that "[r]ejections on prior art in reexamination proceedings may only be made on the basis of prior patents or printed publications."  MPEP § 2258 (4th ed. Rev. 7, July 1981), available at https://www.uspto.gov/web/offices/pac/mpep/old/mpep_E4R7.htm. The section identified the portions of 35 U.S.C. § 102 that may form the basis of a prior art rejection during reexamination, including patents under § 102(e).  *Id.*

### 3. The American Inventors Protection Act Required Publication of Patent Applications and Amended § 102(e) to Establish that the Prior Art Date of a Published Patent Application is the Application's Filing Date

While 102(e) initially addressed only patents, Congress passed the American Inventors Protection Act ("AIPA") in 1999, which, among other things, required patent applications to be published promptly after the expiration of a period of 18 months from the earliest filing date, thereby establishing the concept of a patent application publication.  Pub. L. No. 106–113, 113 Stat. 1501, 1501A-561 (1999); 35 U.S.C. § 122(b).  With this development, Congress also provided that published patent applications are prior art in their own right.  Congress effected this by splitting section 102(e)'s definition of prior art into subsection (e)(1) for published patent applications and subsection (e)(2) for issued patents.  *Id.* at 1501A-565.

7

Under § 102(e)(1), Congress provided that a published patent application, like an issued patent, qualifies as prior art from its filing date. In amending § 102(e) to add published patent applications, Congress intended "to treat an application published by the PTO in the same fashion as a patent published by the PTO." H.R. Rep. No. 106-287 at 56 (1999).

After Congress amended § 102(e) in 1999 to include published patent applications, the USPTO updated the MPEP section addressing the scope of ex parte reexamination. Specifically, the revised MPEP section quoted the newly amended version of § 102(e), and included both published patent applications and patents as possible bases for making a prior art rejection in reexamination. MPEP § 2258 (8th ed. Aug. 2001), available at https://www.uspto.gov/web/offices/pac/mpep/old/E8R0_2200.pdf.

Also in 1999, Congress established inter partes reexamination, creating a procedure that granted third parties greater opportunities to participate in the proceedings. Pub. L. No. 106–113, 113 Stat. 1501, 1501A-567 (1999). The newly enacted statute established that the scope of prior art available for inter partes reexamination would be the same as the scope available for ex parte reexamination. *Id.* The USPTO again amended the MPEP to account for this new reexamination procedure, creating a new chapter entitled "Optional Inter Partes Reexamination" and making clear that the universe of prior art that could be

8

considered in inter partes reexamination was the same as that in ex parte reexamination—prior art patents or printed publications.  MPEP § 2658 (8th ed. Rev. 2, May 2004), available at https://www.uspto.gov/web/offices/pac/mpep/old/E8R2_2600.pdf.

### 4. Congress Sets the Scope of Inter Partes Review as Identical to the Scope of Reexamination

In 2011, approximately 31 years after the inception of ex parte reexamination and against the backdrop of the USPTO's interpretation of the reexamination statutes, Congress enacted the Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-59, 125 Stat. 284 (2011), "convert[ing] inter partes reexamination from an examinational to an adjudicative proceeding, and renam[ing] the proceedings 'inter partes review.'"  H.R. Rep. 112–98 at 46-47 (2011); *see also Abbott Lab'ys v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013) ("In 2011, Congress replaced inter partes reexamination with a new proceeding called inter partes review.").  The Supreme Court has explained that "[a]lthough Congress changed the name from 'reexamination' to 'review,' nothing convinces us that, in doing so, Congress wanted to change its basic purposes, namely, to reexamine an earlier agency decision."  *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 279 (2016).

Congress set forth that a petitioner, seeking to initiate an inter partes review, "may request to cancel as unpatentable 1 or more claims of a patent only on a

ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). Congress thus used language in the AIA that is *identical* to the language used for reexamination: "prior art consisting of patents or printed publications." *Compare* 35 U.S.C. § 311(b) *with* 35 U.S.C. §§ 301(a)(1), 302; *see also Qualcomm Inc. v. Apple Inc.*, 24 F.4th 1367, 1373-74 (Fed. Cir. 2022) (noting the "identical language" in § 301(a) and § 311(b)); *Uniloc 2017 LLC v. Hulu, LLC*, 966 F.3d 1295, 1306 (Fed. Cir. 2020) (stating that § 311 is "premised on the pre-AIA reexamination statute" and includes "analogous language"). Congress restricted inter partes review to "patents or printed publications" for the same reasons given for reexamination, namely "to create a streamlined administrative proceeding that avoided some of the more challenging types of prior art identified in 35 U.S.C. § 102, such as commercial sales and public uses, by restricting the 'prior art' which may form a basis of a ground to prior art documents." *Qualcomm Inc.*, 24 F.4th at 1376.

## B.    Procedural Background

Samsung Electronics Co., Ltd. filed a petition requesting inter partes review of claims 7-20 of U.S. Patent No. 10,687,400 ("the '400 patent"), which claims priority through a long chain of applications to a provisional application filed on February 25, 2004. Appx2, Appx75-76. After institution, patent owner Lynk

Labs, Inc. filed a statutory disclaimer of claims 14 and 18-20, limiting the

proceeding to claims 7-13 and 15-17. *Id.* Samsung's petition raised nine separate

unpatentability grounds, seven of which involved combinations of prior art

including the Martin reference, which is a published patent application with a filing

date of April 16, 2003 and a publication date of October 21, 2004. Appx7. In

other words, the Martin application was *filed* before the earliest priority date of the

'400 patent, but was published afterwards.

During the proceeding, Lynk argued that Martin was not available as prior

art in the inter partes review. Lynk's argument focused on the language in

35 U.S.C. § 311(b), which limits the scope of inter partes review to "prior art

consisting of patents or printed publications." According to Lynk, Martin did not

become a "printed publication" until its publication date, October 21, 2004.

Appx10-11. Because that publication date occurred after the February 25, 2004

priority date of the '400 patent, Lynk asserted that Samsung could not rely on

Martin in the proceeding. *Id.*

In a final written decision, the Board found that Samsung met its burden to

show that all of the challenged claims were unpatentable. Appx2. The Board

addressed and rejected Lynk's argument that Martin was not available as prior art

in the inter partes review. Appx10-12. The Board found that "prior art consisting

of patents and publications," as recited in § 311(b), encompasses § 102(e)(1)

11

published patent applications, which are prior art as of their filing date, and not their publication date. Appx11. The Board found that Lynk's public accessibility arguments were based on § 102(b) printed publications, which the Patent Act treats differently than § 102(e) published patent applications. *Id.*

While acknowledging that there was no precedent directly on point, the Board noted that this Court has applied § 102(e)(1) prior art in at least one appeal from an inter partes review. Appx11-12 (citing *Purdue Pharma L.P. v. Iancu*, 767 F. App'x 918, 920-21, 926 (Fed. Cir. 2019) (nonprecedential)). The Board further noted that it has regularly instituted inter partes review trials and determined claims to be unpatentable based on § 102(e)(1) published patent applications. Appx12.

### III.  SUMMARY OF THE ARGUMENT

The Director intervenes to address the scope of permissible prior art in inter partes review proceedings under 35 U.S.C. § 311(b). It is common ground that, outside the context of an inter partes review, the Martin application would constitute prior art to the '400 patent. Lynk also does not dispute that the Martin application could properly be considered as prior art during inter partes review of a patent with a priority date that post-dated the Martin application's publication. Lynk's position reduces to the proposition that Congress adopted an anomalous priority rule for published patent applications that applies only in the context of

12

inter partes review proceedings.  Lynk offers no coherent explanation as to why Congress would have intended such a result, which would be at odds with background principles of patent law, statutory text, statutory purpose, and the USPTO's longstanding and consistent practice.  A published patent application is a "printed publication," by virtue of its publication by the USPTO.  And § 102(e)(1) establishes that a published patent application is prior art as of its filing date, and not its publication date.  Together, these two facts establish that the Board was correct to consider the Martin application, which was both "prior art" and a "printed publication."

Congress's intended purpose behind the "patents or printed publications" language in § 311(b) further supports the inclusion of published patent applications in inter partes review proceedings.  This language first appeared in the ex parte and inter partes reexamination statutes, and was intended to limit reexamination proceedings to document-based unpatentability grounds in an effort to make reexamination a streamlined and relatively inexpensive way to challenge issued patent claims.  The statutory language thus excluded more complicated unpatentability grounds, such as prior use or commercial sales, which typically require oral testimony in addition to documentary evidence.  In the AIA, Congress chose to use the same language to define the scope of inter partes review, and did so for the same purpose.  It strains credulity to believe that, while Congress

intended to limit reexamination and inter partes review to document-based

unpatentability grounds, it nevertheless intended to exclude a statutory category of

document-based prior art.

Congress also enacted the AIA and used this same language against the

backdrop of 30 years of the USPTO consistently interpreting the phrase "patents or

printed publications" to include § 102(e) prior art.  The MPEP includes guidance

on what constitutes "prior art consisting of patents or printed publications" for use

in reexamination.  In 1981, the MPEP identified § 102(e) patents as prior art

available for use in reexamination, and the MPEP added § 102(e)(1) published

patent applications to the list shortly after passage of the AIPA.  The fact that

Congress used the same statutory language in the AIA to define the scope of inter

partes review, and did not disturb the agency's longstanding administrative

interpretation of the statutory language as including published patent applications

under § 102(e), is persuasive evidence that the USPTO's interpretation was, and

continues to be, correct.

Lynk and amicus VLSI rely heavily on this Court's precedent regarding non-

patent printed publications, such as journal articles or product catalogs.  Such

documents are considered "printed publications" as of the date they become

publicly accessible, i.e., their publication date.  But while a published patent

application is also a printed publication, it carries with it a prior art date set by

14

§ 102(e) as its filing date. Accordingly, precedent addressing the prior art date of a journal article or product catalog has no bearing on the prior art date of a published patent application.

This Court should uphold the agency's well-established practice of using published patent applications as prior art from their filing dates in IPR proceedings, as it is firmly rooted in statutory text, legislative intent, and consistent with long-standing administrative and judicial precedent.

## IV. ARGUMENT

### A. Standard of Review

Statutory construction is a question of law that this Court reviews de novo. *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1330 (Fed. Cir. 2020).

### B. A Published Patent Application is a "Printed Publication" Under § 311(b) as of the Application's Filing Date

#### 1. The Text, Structure, and Purpose of the Patent Act Support the Conclusion that Published Patent Applications Fall Within the Scope of § 311(b)

A published patent application is a printed publication that qualifies as prior art as of its filing date and therefore is available prior art in an inter partes review proceeding under § 311(b). This result comes directly from the language of the Patent Act.

15

"Statutory interpretation begins with the words of the statute." *Mulder v. McDonald*, 805 F.3d 1342, 1345 (Fed. Cir. 2015). But the Court cannot construe a statutory provision in a vacuum. *Colonial Press Int'l, Inc. v. United States*, 788 F.3d 1350, 1356 (Fed. Cir. 2015). "[T]he meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991). Thus, "[e]ach part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." *In re Nantucket, Inc.*, 677 F.2d 95, 98 (CCPA 1982). The Court must "find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purpose that Congress manifested." *Ingalls Shipbuilding, Inc. v. Dalton*, 119 F.3d 972, 977 (Fed. Cir. 1997) (quoting *NLRB v. Lion Oil Co.*, 352 U.S. 282, 297 (1957)). The Court "give[s] effect to the intent of Congress by 'look[ing] not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.'" *In re Swanson*, 540 F.3d 1368, 1374-75 (Fed. Cir. 2008) (quoting *Crandon v. United States*, 494 U.S. 152, 158 (1990)).

Here, § 311(b) provides that "[a] petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of *prior art consisting of patents or printed publications*." 35 U.S.C. § 311(b) (emphasis

16

added). The language of § 311(b) therefore requires an unpatentability ground to be based on a reference that is (1) prior art and (2) a patent or printed publication.

To the first requirement of § 311(b), that a reference be prior art, the Patent Act establishes a special rule for the prior art date of a published patent application. Section 102(e)(1) states that a published patent application qualifies as prior art from the application's filing date, rather than the publication date. The statute embodies Congress's policy choice, drawn directly from *Alexander Milburn*, that "the filing of a patent application . . . makes the invention disclosed public property as much as an actual publication in a periodical." *Schlittler*, 234 F.2d at 887 (citing *Alexander Milburn Co.*, 270 U.S. at 400-401); *see also Hazeltine Rsch., Inc.*, 382 U.S. at 256 ("When Wallace filed his application he had done what he could to add his disclosures to the prior art.").

As to the second requirement, a published patent application is undoubtably a "printed publication." The Patent Act specifies with no uncertainty that the application is published. 35 U.S.C. § 122(b); *see also* 37 C.F.R. §§ 1.211, 1.215. The published application is also a publicly accessible document. *See* MPEP § 1128 (9th ed. Rev. 07.2022, Feb. 2023). Thus, when the USPTO publishes a patent application, it becomes a printed publication with the application's filing date as the effective prior art date.

In arguing that published patent applications are not within the scope of

§ 311(b), Lynk conflates section 311's two distinct elements ("prior art" and

"printed publication"), insisting that material other than patents may only be

considered in an IPR if it has prior art status *solely by virtue* of the fact that it is a

printed publication.  But that is not the statute wrote.  Lynk thus errs when it

attempts to group published patent applications with other types of non-patent

documents, and asserts that the effective prior art date for all printed publications is

the date that the document is made publicly accessible.  Br. at 58.  Lynk's

argument confuses the question whether a document is a "printed publication" with

a separate question: when the document at issue became "prior art" that may

invalidate other patent claims based on later-filed applications.  And it ignores the

important distinction between published patent applications and these other

documents.

It is thus beside the point that this Court has developed a body of law to

specifically address whether a non-patent document qualifies as a "prior art . . .

printed publication" under § 102(a) or § 102(b), under which public accessibility

guides that analysis, as opposed to the date of writing or submission for

publication.  *See, e.g.*, *In re Klopfenstein*, 380 F.3d 1345, 1350-52 (Fed. Cir. 2004)

(slide presentation printed on poster board and displayed at a conference before the

critical date qualified as a printed publication).  The purpose behind the public

accessibility inquiry for these non-patent documents is to determine "whether the publication has in fact conveyed such knowledge of an invention to the public to put the public in possession of the invention." *In re Elsner*, 381 F.3d 1125, 1130 (Fed. Cir. 2004) (quoting *In re LeGrice*, 301 F.2d 929, 936 (CCPA 1962)). "[O]nce an invention is in the public domain, it is no longer patentable by anyone." *In re Hall*, 781 F.2d 897, 898 (Fed. Cir. 1986); *see also In re Wyer*, 655 F.2d 221, 226 (CCPA 1981) ("[T]he printed publication provision was designed to prevent withdrawal by an inventor . . . of that which was already in the possession of the public.").

In contrast, the prior art date of a published patent application is set by statute to be the filing date of the application. 35 U.S.C. § 102(e)(1). Indeed, the statute reflects that disclosures in a patent application are viewed as being in the public's possession as of the date of filing the application, "as much as the actual publication in a periodical." *Schlittler*, 234 F.2d at 887. A published patent application is treated as prior art as of its filing date even though the application does not become published until 18 months after filing. 35 U.S.C. §§ 102(e)(1), 122(b). Likewise, a patent is treated as prior art as of its filing date even though it is not published until a later date. 35 U.S.C. § 102(e)(2). Lynk's reading of § 311(b) fails to take into consideration the special rule for published patent

19

applications found in § 102(e)(1); Lynk thus fails to construe the statutory language in the context of the entire Patent Act. *King*, 502 U.S. at 221.

### 2. Congress Used "Patents or Printed Publications" to Distinguish Document-Based Prior Art from Other Types of Prior Art

The interpretation of § 311(b) is clear from the language of the statute and its statutory context alone. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 673-74 (2020) ("This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end."). Nevertheless, the purpose behind § 311(b) supports the USPTO's position that published patent applications are within the scope of prior art available for use in an inter partes review.

To the extent that there is any ambiguity in the text of the statute, this Court "then turn[s] to the legislative history to further elucidate Congress' intent." *Swanson*, 540 F.3d at 1376. Congress first used the phrase "prior art consisting of patents or printed publications," in the ex parte reexamination statute in 1980. Pub. L. No. 96–517, 94 Stat. 3015 (1980). As the legislative history behind the reexamination statute makes clear, the phrase was intended only to distinguish document-based prior art grounds from other, more complex prior art grounds that typically require oral testimony. "The congressional purpose in restricting reexamination to printed documents, 35 U.S.C. § 301, was to provide a cheaper and less time-consuming alternative way to challenge patent validity on certain

20

issues." *Quad Environmental Techs. Corp..*, 946 F.2d at 875 n.7 (citing H.R. Rep. 96-1307 at 4 (1980)). Thus, "questions of public use and on sale were explicitly excluded by statute from those issues on which reexamination could be obtained." *Id.* at 875.

The phrase "prior art consisting of patents or printed publications" has now carried over to inter partes review. 35 U.S.C. § 311(b). In the AIA, Congress again chose to distinguish document-based prior art from other, more complex types of prior art. "Congress sought to create a streamlined administrative proceeding that avoided some of the more challenging types of prior art identified in 35 U.S.C. § 102, such as commercial sales and public uses, by restricting the 'prior art' which may form a basis of a ground to prior art documents." *Qualcomm Inc.*, 24 F.4th at 1376; *see also* H.R. Rep. 112–98 at 48 (2011) (stating that the purpose of inter partes review is to "provid[e] quick and cost effective alternatives to litigation").

Published patent applications are the type of reliable documentary evidence well-suited for consideration in a streamlined administrative proceeding. In § 311(b), Congress specifically provided for raising grounds under § 102 and Congress did not provide any indication that it chose the language "patents or printed publications" with the intent to exclude published patent applications, an established documentary category of prior art available under § 102. And use of

21

published patent applications in inter partes review does not "implicate the type of fact-intensive inquiries Congress was seeking to avoid." *Qualcomm Inc.*, 24 F.4th at 1376.

Given that the shared purpose of reexamination and inter partes review is to provide an efficient post-issuance process to remedy any patentability defects in view of *prior art documents*, it would make little sense for Congress to choose to eliminate only one category of prior art document—the published patent application—from the scope of reexamination and inter partes review. And though § 311(b) does not refer to patent applications by name, that fact is readily explained by the fact that in § 311(b), Congress simply carried forward language from the ex parte reexamination statute, which was enacted before Congress authorized the publication of patent applications. The Court should not infer that Congress intended an inexplicable result from language that is readily attributable to historical accident. The illogical nature of any exclusion of published patent applications is further underscored when considering that Lynk does not dispute that prior art patents under § 102(e)(2) are within the scope of § 311(b). *See* Br. at 65; *see infra* IV.E.

### C.    The USPTO's Longstanding Inclusion of Published Patent Applications Under the Category of "Printed Publications" Supports the Board's Decision

For over 20 years, the USPTO has interpreted "prior art consisting of patents or printed publications" to include published patent applications under § 102(e)(1). After Congress amended § 102(e) in 1999 to include published applications, the USPTO amended the MPEP to reflect that the scope of prior art available to use in reexamination included § 102(e)(1) published patent applications.  MPEP § 2258 (8th ed. Aug. 2001), available at https://www.uspto.gov/web/offices/pac/mpep/old/E8R0_2200.pdf.  This has been the status quo for both ex parte and inter partes reexamination, as reflected in every version of the MPEP since August 2001.[2]

---

[2] While this issue has not yet come before the Court directly, the Court has considered appeals from inter partes review proceedings and reexaminations that involved § 102(e)(1) prior art.  *See Purdue Pharma L.P.*, 767 F. App'x at 925 (finding that the Joshi published patent application qualifies as § 102(e) prior art in an IPR); *Fluor Tec, Corp. v. Kappos*, 499 F. App'x 35 (Fed. Cir. 2012) (non-precedential) (considering an appeal from an inter partes reexamination involving a § 102(e)(1) published patent application).  Additionally, the Court has addressed the requisite showing required for an IPR petitioner to rely on an earlier provisional application filing date for § 102(e) prior art.  *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015); *see also Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1380 (Fed. Cir. 2017) (rejecting the argument that *Dynamic Drinkware* was limited to addressing § 102(e)(2) prior art patents, as opposed to § 102(e)(1) prior art published patent applications).

When drafting the AIA, Congress chose to use the same language from reexamination to define the scope of inter partes review, 35 U.S.C. § 311(b), and did so against the backdrop of the USPTO's long-standing and consistent definition of "prior art consisting of patents or printed publications" as including published patent applications.  This is a strong indicator that Congress intended the language in the AIA to have the same scope.  "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, 'the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'"  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274-75 (1974)); *Saxbe v. Bustos*, 419 U.S. 65, 74 (1974) (noting that a "longstanding administrative construction is entitled to great weight, particularly when . . . Congress has revisited the Act and left the practice untouched").

In fact, "the interpretative value of congressional acquiescence is strengthened where 'Congress has amended various parts' of a statutory regime, 'including the specific provision at issue' in the case at hand, 'but has never sought to override' the relevant interpretation."  *Washington All. of Tech. Workers v. United States Dep't of Homeland Security*, 50 F.4th 164, 183 (D.C. Cir. 2022) (citation omitted).  This is true here.  Congress amended the statute in 2011 to

24

replace inter partes reexamination (§§ 311-318) with inter partes review (§§ 311-319) and kept the "prior art consisting of patents or printed publications" language, which is persuasive evidence that the USPTO's longstanding inclusion of published patent applications as "printed publications" is correct.

### D.    The Arguments Raised by Lynk and VLSI Lack Merit

Lynk's reading of § 311(b)—that excludes published patent applications— looks only at the statutory text in isolation, devoid of any context, and focuses solely on non-patent documents.  Lynk first points to this Court's case law addressing whether *non-patent* documents qualify as "printed publications" under § 102(a) or § 102(b), arguing that under this precedent published patent applications qualify as prior art "printed publications" only as of the date that they become publicly accessible.  Lynk Br. at 58-59; *see also* VLSI Br. at 5-7 (making an identical argument).  But the precedent cited by Lynk is specific to the publication date for non-patent documents such as scientific journals and product catalogs.  While published patent applications are contained within the scope of "printed publications," as discussed above, the Patent Act establishes a different prior art date for such documents, making them prior art as of their filing date, rather than their publication date.  35 U.S.C. § 102(e)(1).  The case law cited by Lynk does not cast doubt on the published patent application at issue here.

Lynk also points to the fact that § 102 uses "printed publication" and "application for patent," arguing that the use of these different terms means that a published patent application cannot be a "printed publication." Lynk Br. at 60-61; *see also* VLSI Br. at 12-15. Similarly, Lynk argues that "printed publication" must be given the same meaning in § 102 and § 311(b), thereby excluding applications for a patent. Lynk Br. at 63; *see also* VLSI Br. at 18. Neither argument demonstrates error by the Board. "Printed publication" is a broad term that covers any document made publicly accessible, while "application for patent" is specific to published patent applications. It simply does not follow that an "application for patent" cannot also qualify as one type of "printed publication," and nothing in the statutory language compels such a reading. Thus, interpreting "patents or printed publications" to encompass published patent applications is consistent with (1) the terms "printed publication" and "application for patent" having different scopes (one encompassing the other); (2) the term "printed publication" having the same meaning in § 102 and § 311(b) (a meaning that encompasses an application for patent); and (3) an "application for patent" being a type of "printed publication" that, under the statute, has a prior art date as of its filing date, rather than its publication date.

The cases cited by Lynk and VLSI that distinguish between a patent application and a printed publication are inapposite. *See* Lynk Br. at 60-61; VLSI

26

Br. at 13-14. Those cases all pre-date the passage of the AIPA and therefore are before the publication of patent applications and before enactment of § 102(e)(1). As such, the cited cases refer only to patent applications that are not published and differentiate patent applications from printed publications on the basis that they were not made publicly available. *See, e.g.*, *Nw. Fire Extinguisher Co. v. Philadelphia Fire Extinguisher Co.*, 18 F. Cas. 394, 398 (E.D. Pa. 1874) (noting that a rejected patent application "lack[s] the essential quality of a publication" because it was "not designed for general circulation" nor "made accessible to the public generally"). It is uncontroversial that a patent application that is never made publicly available cannot qualify as a "printed publication." *See* 35 U.S.C. § 102(e)(1) (limited to applications published under § 122); *cf. Becton, Dickinson & Co. v. Baxter Corp. Englewood*, No. IPR2019-00119, 2019 WL 1979703, at *7 (P.T.A.B. May 3, 2019) (patent application that was not published at applicant's request "is not prior art under 35 U.S.C. § 102(e)(1)"), *rev'd on other grounds*, 998 F.3d 1337, 1345 n.6 (Fed. Cir. 2021). But those cases do not address the issue here, which is whether a *published* patent application qualifies as a prior art printed publication and what prior art date it has.

Both Lynk and VLSI point to this Court's *Qualcomm* decision, which states that an inter partes review must be based on patents or printed publications "existing at the time of the patent application." *Qualcomm Inc.*, 24 F.4th at 1374

(quoting *Return Mail, Inc. v. United States Postal Serv.*, 139 S. Ct. 1853, 1860 (2019)).  Lynk and VLSI argue that because Martin was not publicly available by the filing date of the '400 patent, it did not "exist."  Lynk Br. at 65-66; VLSI Br. at 23.  But in *Qualcomm*, the Court was simply explaining that the "patents or printed publications" referenced in § 311(b) must be prior art to the challenged patent, thus excluding "any descriptions of the prior art contained in the challenged patent." *Qualcomm Inc.*, 24 F.4th at 1374.  Here, there is no question that Martin is a printed publication.  And based on § 102(e)(1), it qualifies as prior art—because its filing date is prior to the February 25, 2004 priority date of the '400 patent.

Regardless, Martin did "exist" by the critical date—the application had been filed with the USPTO.  The fact that Martin had not yet published is not relevant because Martin's filing date is the only date that matters under § 102(e)(1).  The act of filing the patent application "makes the invention disclosed public property as much as an actual publication in a periodical."  *Schlittler*, 234 F.2d at 887.

### E.    Adopting Lynk's Reading of § 311(b) Would Lead to Anomalous Results

Lynk does not reckon with the ramifications of its interpretation of § 311(b) to exclude published patent applications.  Adopting Lynk's interpretation would lead to results that Congress could not have intended.  A statutory interpretation that "frustrates Congress's intent, encourages undesirable behavior, and produces

28

absurd results" should be avoided.  *Timex V.I., Inc. v. United States*, 157 F.3d 879, 887 (Fed. Cir. 1998).

Specifically, under Lynk's reading of § 311(b), IPR petitioners could rely on patents under § 102(e)(2) as of their filing date, but not published patent applications under § 102(e)(1).  *See* Lynk Br. at 65 (asserting that use of a § 102(e)(2) reference in an inter partes review "is a different question"); VLSI Br. at 22 (stating that "[s]ection 311(b) expressly allows IPR challenges based on" prior art patents under § 102(e)(2)).  Thus, under Lynk's interpretation of the statute, whether a patent application may be used as prior art in an inter partes review proceeding will depend on whether and when that patent application matured into a patent.  But the use of the filing date under § 102(e) does not turn on the patentability of the disclosure, but rather its submission to the USPTO and ultimate publication.  Not only does Lynk's interpretation lead to an illogical result, but it runs contrary to Congress's intent "to treat an application published by the PTO in the same fashion as a patent published by the PTO."  H.R. Rep. No. 106-287 at 56 (1999).  If an IPR petitioner may rely on the filing date of a prior art patent under § 102(e)(2), there is no reason for any different interpretation when it comes to published patent applications under § 102(e)(1).

Additionally, Lynk's interpretation would lead to published patent applications having different prior art dates depending on the proceeding in which

they were involved.  During initial examination, reissue, and district court litigation, a published patent application would be prior art as of its filing date.  But in reexamination and inter partes review proceedings, a published patent application would be prior art as of its publication date.  This disparity between prior art dates in inter partes review and district court would undermine Congress's intent of streamlining determinations of invalidity based on patents or printed publications.  The type of proceeding should not dictate something as foundational as the effective prior art date of a reference nor can it entirely negate the language of § 102(e)(1) which establishes the prior art date of a published application.

## V.    CONCLUSION

For the foregoing reasons, this Court should hold that § 102(e)(1) published patent applications may be relied upon in inter partes review proceedings because they fall within the scope of "prior art consisting of patents or printed publications" in 35 U.S.C. § 311(b).

Respectfully submitted,

May 3, 2024

/s/ Michael S. Forman
FARHEENA Y. RASHEED
Acting Solicitor
AMY J. NELSON
Acting Deputy Solicitor
PETER J. AYERS
Senior Counsel, Patent Law & Litigation

MICHAEL S. FORMAN
MAUREEN D. QUELER
Associate Solicitors
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313

*Attorneys for the Director of the
United States Patent and
Trademark Office*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the type-volume limitation in Fed. Cir. R. 32(b). The total number of words in the foregoing brief is 7,123, as calculated by Microsoft Word 2021.

/s/ Michael S. Forman
MICHAEL S. FORMAN
Associate Solicitor
United States Patent & Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450